# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JEREMY FRYE,<br><br>  Plaintiff,<br><br>vs.<br><br>HAMILTON COUNTY HOSPITAL d/b/a Van Diest Medical Center; MERCY HEALTH NETWORK, INC., and WEBSTER CITY/WEBSTER CITY POLICE DEPARTMENT,<br><br>  Defendants. | No. 18-CV-3031 CJW<br><br>**ORDER** |

Before me are Plaintiff's motion to compel (Doc. 43) and Plaintiff's motion to compel (Doc. 46) directed at Defendant Hamilton County Hospital d/b/a Van Diest Medical Center ("VDMC"). VDMC timely resisted both motions and Plaintiff filed replies. On March 4, 2019, the Court held a hearing on the motions. The parties[1] were directed to confer in good faith to further narrow the issues for decision. On March 18, 2019, they filed their respective notices regarding the outcome of those efforts. (Docs. 54, 55.)

## I. BACKGROUND

Jeremy Frye was formerly employed as the Plant Operations Director at the Hamilton County Hospital. (Doc. 34 ¶¶ 9-10.) This lawsuit arises from his termination from that position. Frye alleges violations of the Iowa Constitution, claims pursuant to 42 U.S.C. § 1983 for violation of his rights under the United States Constitution,

---

[1] I will use "parties" to refer to the two disputants in this discovery matter: Frye and VDMC.

1

violations of the Family and Medical Leave Act, wrongful discharge in violation of public policy, wrongful attempted search and seizure, and violation of Iowa's drug testing law.

Frye's employment was terminated on December 15, 2016. Frye appealed the denial of unemployment benefits on January 16, 2017. (Doc. 44-1.) On April 27, 2017, an ALJ held a hearing on Plaintiff's unemployment claim. (Doc. 34 ¶ 14.) VDMC was represented by attorney Maggie Hanson. (*Id.* ¶ 16.) A decision was issued on May 1, 2017. (*Id.* ¶ 50.) Frye filed a Petition at Law in Iowa state court on April 6, 2018, which was subsequently removed to this Court on May 14, 2018. (Doc. 1.)

Frye's first motion to compel asserts, in pertinent part:

> Several of the claims against Defendant VDMC relate to VDMC's alleged request for Plaintiff to submit to a reasonable suspicion drug test and his termination from employment for his alleged failure to do so. The Plaintiff's former supervisor, Lori Rathbun, is a material witness who made the decision and request for a drug-test, and Ms. Rathbun ultimately made the decision to terminate the Plaintiff. Ms. Rathbun died in February, 2018, without an opportunity for Plaintiff to perpetuate Ms. Rathbun's testimony. Therefore, Plaintiff has a substantial need for any records, including communications that may have been had, whereby Ms. Rathbun may have been the declarant. Without Plaintiff's review of a privilege log, in compliance with Rule 26(b)(5)(A), Plaintiff is unable to assess the claimed privileges and is prevented from articulating facts which may be relevant as to whether or not any claimed privilege exists or is proper.

(Doc. 43 ¶ 5.) Frye's first motion seeks "a privilege log in compliance with Fed. R. Civ. P. 26(b)(5)(A)" and the expenses of obtaining that log. (*Id.* ¶ 17.)

Defendant objected to certain requests for production of documents that it contends seek documents protected by the attorney-client and work product privileges. Defendant also objected to the production of a privilege log for communications that occurred after litigation commenced. Perhaps recognizing the unusual circumstances created by Ms. Rathbun's death, VDMC produced notes of conversations that VDMC employees made of their conversations with Ms. Rathbun when investigating the incidents at the time of

Frye's termination. The attorneys from Nyemaster Goode, who represent VDMC in this litigation, and the attorneys from Davis Brown, who represented VDMC in the unemployment proceeding, did not speak with Ms. Rathbun about Frye, his termination, or the facts or circumstances related to his claims. (Doc. 44 at 2-3.)

Frye filed a second motion to compel on January 21, 2019 asserting that VDMC waived its asserted privileges by failing to provide a privilege log and, therefore, that it should be compelled to produce any document withheld on attorney privilege or work product grounds. (Doc. 46 at 3-4.)

## II. DISCUSSION

### A. Scope of any privilege log

The principal issue to be resolved is the scope of the privilege log VDMC is required to provide. These motions do not require me to rule on individual objections and decide whether any privilege applies. Nevertheless, because Frye seeks to overcome a claim of privilege based on the death of Ms. Rathbun, it is necessary to keep in mind the nature and limits of these privileges while considering the necessity of a privilege log and its contents.

### B. Work product material

Federal Rule of Civil Procedure 26(b)(3) governs the disclosure of work product:

> **(3)** *Trial Preparation: Materials*.
> **(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>     **(i)** they are otherwise discoverable under Rule 26(b)(1); and
>     **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> **(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions,

3

conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). In this case, Frye may well assert that statements made by Rathbun or information about her that might otherwise be attorney work product are discoverable because of substantial need. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). A privilege log is necessary to assess the legitimacy of such objections.

### C. Attorney-client privilege

With regard to the attorney-client privilege, the issue is not whether an exception exists, but whether the statement has been properly categorized as a protected communication. *Keefe v. Bernard* discusses the most relevant aspect of the privilege to the case at bar:

> We agree with the United States Supreme Court that the corporate attorney-client privilege should not be limited to those in the "control group." Instead, the test must focus on the substance and purpose of the communication. If an employee of a corporation or entity discusses his or her own actions relating to potential liability of the corporation, such communications are protected by the attorney-client privilege. . . . If, on the other hand, a corporate employee is interviewed as a "witness" to the actions of others, the communication should not be protected by the corporation's attorney-client privilege.

774 N.W.2d 663, 672 (Iowa 2009) (internal citation omitted). Similarly, the Eighth Circuit articulated the following elements that must be met before a communication made by a corporate employee to an attorney, but not necessarily during the course of litigation, will be considered privileged.

> [T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so

4

at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1978) (en banc). The corporation has the burden to prove a communication fulfills all the above elements. *Id.* Conceivably, non-privileged information that is not protected from disclosure could escape production if the party holding the information makes the disclosure decision without providing a privilege log. A privilege log is necessary to assess whether communications that might otherwise be discoverable have been improperly categorized as attorney-client privileged.

**D.     The privilege log requirement**

The Federal Rules of Civil Procedure never refer to a "privilege log." "Rather, the privilege log is a convention of modern legal practice designed to conform with the requirements of Federal Rule of Civil Procedure 26(b)(5)." *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011). Rule 26(b)(5)(A)(ii) does, however, require a party to describe the nature of the otherwise discoverable information when that party asserts a claim of privilege. Such privilege logs "can aid the court in its resolution of a dispute, but '[t]he tribunal ultimately decides what information must be disclosed on a privileged document log.'" *Prism Techs., LLC v. Adobe Sys., Inc.*, No. 8:10CV220, 2011 WL 5523389, *1 (D. Neb. Nov. 14, 2011) (quoting *PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship,* 187 F.3d 988, 992 (8th Cir.1999)).

**E.     Scope of the privilege log**

The fighting issue prior to the hearing was whether VDMC should be required to produce a privilege log for attorney-client or privileged communications that occur or

5

work product that is created after litigation has commenced. Because of further efforts to resolve this matter by counsel, it now appears the parties have narrowed the issues to be decided. VDMC is willing to provide a privilege log from January 1, 2016 through December 31, 2016 (i.e., shortly after Frye was terminated). (Doc. 54.) Frye's statement of the remaining issue is a bit more obtuse:

> Plaintiff respectfully requests that the Court order VDMC to prepare a privilege log so as to comport with the requirements detailed by Rule 26 (b)(5); with the stipulation that privileged communications, as contemplated in *Keefe v. Bernard*, between VDMC and Counsel subsequent to April 6, 2018 need not be included.

(Doc. 55 ¶ 11.) Thus, I take it that the remaining issues to be resolved are (1) the relevant dates for the privilege log; and (2) the documents and information subject to disclosure on the log.

VDMC relies on *Brown v. West Corp.*, 287 F.R.D. 494, 499 (D. Neb. 2012) which states, "This Court has joined other district courts in assuming privilege for attorney-client communications that transpire after the initiation of litigation in situations where the plaintiff is requesting extensive discovery. *Id*. The Court sees no reason to depart from that assumption in this case." This assumption does not appear to be universal. *See e.g., First Horizon Nat'l Corp. v. Certain Underwriters at Lloyd's*, 2013 WL 11090763, *3 (W.D. Tenn. Feb. 27, 2013) ("'[T]he institution of a lawsuit does not relieve the party opposing production of its burden of demonstrating' the applicability of any given privilege.") (quoting *Weber v. Paduano*, No. 02 Civ. 3392 (GEL), 2003 WL 161340, at *7 (S.D.N.Y. Jan. 22, 2003)); *Horton v. U.S.*, 204 F.R.D. 670, 673 (D. Colo. 2002) ("Moreover, common sense dictates that even post-filing correspondence and materials exchanged between lawyer and client must be listed on the privilege log.").

6

The parties have identified no Eighth Circuit authority and I have found none on the issue of post-litigation privilege logs. *Brown* relied on the following reasoning from *Prism Technologies*:

> Some courts have adopted assumptions that limit the necessity to create such "privilege logs" of communications between a party and counsel in cases where attorney-client privilege is evident, particularly when the communications are voluminous. Defendants cite two cases, one unreported, as examples. The United States District Court for the Northern District of California has written, "[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log. . . . Plaintiff's motion to compel is therefore denied to the extent it seeks to require a log of post-litigation counsel communications and work product. . . ." *Ryan Inv. Corp. v. Pedregal De Cabo San Lucas,* No. C 06–3219, 2009 U.S. Dist. LEXIS 118337, at *9, 2009 WL 5114077 (N.D. Cal. Dec. 18, 2009). Similarly, the United States District Court for the District of New York has written, "[P]rivilege logs are commonly limited to documents created before the date litigation was initiated. . . . [I]n many situations, it can be assumed that all documents created after . . . a lawsuit has been filed and withheld on the grounds of privilege were created 'because of' that pending litigation." *U.S. v. Bouchard Transp.,* No. 08–CV4490, 2010 WL 1529248, at *2 (E.D.N.Y.2010). Further, in a footnote, that court stated, "I find that Plaintiff is legally required to produce a privilege log for all documents created before the date this lawsuit was filed. . . ." *Id.* at *2 n.1.
>
> . . .
>
> The Court finds the reasoning of the other district courts cited above persuasive regarding an assumption of attorney-client privilege regarding communications between the parties and their counsel that took place after the litigation began, especially in light of the extensive discovery requested by plaintiff.

2011 WL 5523389, at *2.

In the instant case, Frye has requested extensive discovery. For example, one of Frye's requests reads as follows:

7

> REQUEST NO. 11: Any reports, notes, memorandums or other writing of any person or entity relating to the incidents involved in this case and/or the Unemployment Insurance Contest, Appeal No. 17A-UI-00493-IP 94.

(Doc. 43-2 at 6.)

Defendant responded:

> VDMC objects to this request to the extent Plaintiff seeks information and materials protected by the attorney-client privilege, the attorney work product doctrine, and/or Fed R. Civ. P. 26(b)(3). VDMC objects to the term "relating to" as undefined, vague, and ambiguous. Subject to this objection, VDMC refers Plaintiff to the non-privileged, non-work product documents produced with its initial disclosures in categories 2(b) and (c) and materials produced in response to request no. 2.

(*Id.*)

Frye's request literally demands every document in VDMC's possession that relates to this matter. This request would include obviously privileged materials like letters counsel may have written analyzing settlement strategy. It would also include obviously immaterial items like pink phone slips with scribbled notes saying, "Call court reporter re bill." Although I am not called upon to rule on individual objections, this request—among others—is far from targeted. This Court frowns on unsubstantiated boilerplate objections. *See St. Paul Reins. Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511, 514 (N.D. Iowa 2000) (calling boilerplate objections "contrary to federal law"). However, broad requests like the one above sweep up privileged and immaterial items indiscriminately and could create a burden on post-litigation communication and creation of work product.

*Brown's* post-litigation cutoff seeks to eliminate the on-going and substantial burden of continually updating a privilege log to disclose relevant but entirely privileged communications, obvious work product, and the mundane detritus of litigation. An on-going obligation to create a privilege log could discourage communication with, and effective representation of, a client.

8

Case 3:18-cv-03031-CJW-MAR   Document 56   Filed 03/26/19   Page 8 of 12

On the other hand, such a cutoff might prevent production of discoverable information that comes to light after litigation is commenced. Using the facts of the instant case to illustrate the point: an attorney for VDMC, during an interview with a VDMC employee, may learn of a statement Ms. Rathbun made about some issue relevant to this case. This communication with counsel may occur after litigation has commenced and may implicate the attorney-client and work product privileges. Without a privilege log for this communication, it would be impossible to pose a challenge to the scope of the attorney-client privilege as contemplated by *Keefe*, 774 N.W.2d at 672 (holding that discussions relating to potential liability of corporation are privileged, but mere witness interviews are not) and *Diversified Industries*, 572 F.2d at 609 (establishing four elements that must be satisfied before privilege will attach).

Similarly, without the log, it would be impossible to overcome a work product privilege claim based on substantial need. *See Baker*, 209 F.3d at 1054 (holding that ordinary work product is not discoverable without substantial need and an inability to obtain the substantial equivalent of the materials by other means).

It remains to be seen if any such material exists, if a privilege will be asserted, or if a claim of privilege can be overcome. Nevertheless, because Ms. Rathbun was a central figure in Frye's termination, it is appropriate to account for the possibility in the creation of VDMC's privilege log. While I am generally persuaded that *Brown*'s approach is sensible, it should be modified to require inclusion of certain post-litigation communications regarding Ms. Rathbun as set forth below.

## F.     The cutoff date

Although the parties have expressed some agreement regarding limiting the privilege log to pre-litigation information, they disagree on the appropriate cutoff date. Frye requests the privilege log continue through April 6, 2018, the date his Petition was

9

Case 3:18-cv-03031-CJW-MAR   Document 56   Filed 03/26/19   Page 9 of 12

filed in state court. VDMC requests that January 17, 2017 (i.e., the date Frye initiated his unemployment appeal) be established as the cutoff date.

I conclude that January 17, 2017 is the date that litigation commenced and after which communications are presumptively privileged and need not be included on any privilege log. The reasons for the denial of Frye's unemployment insurance claim are intertwined with the reasons for his termination. It appears that VDMC had retained counsel to defend the claim. Indeed, Frye's Request No. 11 referenced above is seeking documents relating to both matters.

Therefore, VDMC will be required to provide a privilege log in compliance with Rule 26(b)(5) for all communications it has withheld from discovery based on an assertion of privilege through January 17, 2017.  Counsel's communications with VDMC and any work product developed after that date need not be included on any privilege log *except* those communications that reveal relevant information regarding Ms. Rathbun.  This exception is intended to alert Frye to information about Ms. Rathbun that, because of her unavailability, might be unknown to him.  The exception is not intended to require VDMC to log instances where counsel repeats information pertaining to Ms. Rathbun or generates work product regarding Ms. Rathbun that was previously disclosed.

**G.**     **Alleged waiver of privilege and demand for fees and expenses**

Frye's motion at document 46 alleged that VDMC waived its privilege objections by failing to produce a privilege log.  "[W]aiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Rakes v. Life Inv'rs Ins. Co. of Am.*, No. C06-0099, 2008 WL 429060, at *4 (N.D. Iowa Feb. 14, 2008) (quoting *First Sav. Bank v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995)).  In this case, VDMC asserted its objections, but did not produce a privilege log.  However, VDMC did not merely ignore the obligation to provide a privilege log.  VDMC appears to have engaged in legitimate efforts to narrow the scope

of the privilege log requirement regarding post-litigation communications where no clear authority existed. Ultimately, the parties have agreed to a reduced scope of the privilege log and I have ordered VDMC to provide such a modified privilege log. Under the circumstances, VDMC's privilege objections are not deemed waived.

Frye requests costs and fees in accordance with Federal Rule of Civil Procedure 37(a)(5)(A). The rule provides that if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, then the Court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney fees. As set forth above, the parties attempted to resolve the issues presented in good faith and ultimately narrowed the scope of the issues in dispute.

The Court may decline to grant such expenses if the motion to compel was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). The Court finds sanctions in this instance inappropriate. VDMC asserted good faith and at least partially meritorious arguments regarding the necessity of a post-litigation privilege log.

Therefore, I find that these circumstances make an award of expenses unjust and inappropriate.

**IT IS THEREFORE ORDERED** as follows:

Plaintiff's Motion to Compel **(Doc. 43)** is hereby **GRANTED in part** and **DENIED in part.** Defendant VDMC shall produce a privilege log consistent with this Order within 14 days hereof.

Plaintiff's Motion to Compel **(Doc. 46)** is **DENIED.**

Both motions are **DENIED** as to the request for attorney fees and expenses.

Failure to comply may subject Defendant VDMC to appropriate sanctions upon further application by Plaintiff.

**IT IS SO ORDERED** this 26th day of March, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa