IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JEREMY FRYE,<br><br>    Plaintiff,<br><br>vs.<br><br>HAMILTON COUNTY HOSPITAL, *d/b/a* VAN DIEST MEDICAL CENTER; MERCY HEALTH NETWORK, INC; WEBSTER CITY/WEBSTER CITY POLICE DEPARTMENT,<br><br>    Defendants. | No. 18-CV-3031-CJW-MAR<br><br>**ORDER** |

_____

This matter is before the Court on defendant Hamilton County Hospital d/b/a Van Diest Medical Center's ("the Hospital") Partial Motion to Strike Opinions and Testimony of Expert David G. Stilley. (Doc. 59). Plaintiff filed a timely resistance (Docs. 61, 62), and the Hospital filed a timely reply to plaintiff's resistance. (Doc. 63). On May 24, 2019, defendant Mercy Health Network, Inc. joined in the Hospital's motion to strike. (Doc. 64). No party requested a *Daubert* hearing, and the Court considers this matter fully submitted. For the following reasons, the Hospital's motion is **granted in part and denied in part**.

### *I.   BACKGROUND*

The factual allegations in plaintiff's complaint are set fully in the Court's order on the Hospital's Partial Motion to Dismiss (Doc. 33, at 3-5), and the Court will not recount the full factual background of plaintiff's claims. Plaintiff's complaint alleges thirteen counts related to the Hospital's termination of plaintiff's employment and the events

leading up to and following plaintiff's termination. In relevant part, plaintiff claims that the Hospital, which is publicly funded, violated plaintiff's right to be free from unreasonable searches under Article I, Section 8 of the Iowa Constitution and the Fourth Amendment to the United State Constitution (Counts I and II), that the Hospital wrongfully terminated plaintiff for refusing an unreasonable search in violation of the public policy set forth in Article I, Section 8 and the Fourth Amendment (Counts XI and XII), and that the Hospital violated Iowa Code Section 730.5 by terminating plaintiff for refusing a drug test that did not meet the statutory definition of a reasonable suspicion drug test (Count XIII). (Doc. 34).

The Hospital's drug and alcohol testing policy (the "Policy") states in relevant part:

> D. When Drug or Alcohol Testing May be Conducted
>
> 1. The Hospital reserves the right to conduct any form of drug or alcohol testing permitted by law including, but not limited to, pre-employment, reasonable suspicion testing, post accident testing or random testing.
>
> E. Reasonable Suspicion Testing
>
> 1. Any employee for whom a reasonable suspicion exists that the employee is under the influence of alcohol or an illegal or unauthorized substance will be subject to alcohol or drug testing.
>
> 2. For purposes of this policy, reasonable suspicion may be based upon, but is not limited to, any of the following;
>
>    a. observable phenomena while at work such as direct observation of drug use or abuse or of the physical symptoms or manifestations of being impaired due to drug or alcohol use;
>
>    b. abnormal conduct or erratic behavior while at work or a significant deterioration in work performance;

> c. a report of drug or alcohol use provided by a reliable and credible source;
>
> d. evidence that an employee has manufactured, sold, distributed, solicited, possessed, used, or transferred drugs while working or while on the employer's premises or while operating any of the employer's vehicles, machinery or equipment.

(Doc. 62-6, at 2-3). Plaintiff alleges that the Hospital requested that plaintiff submit to a reasonable suspicion drug test because of behavior that the Hospital believed was "erratic." (Doc. 34, at 4-5). Plaintiff claims that under Article I, Section 8 and the Fourth Amendment, the Hospital "did not have probable cause to meet the standard of Procedure E.1, the 'reasonable suspicion' procedure" of the Hospital's drug testing policy. (*Id.*, at 19, 21 & 23).

Plaintiff designated Dr. David Stilley as an expert witness. (Doc. 59-2). Dr. Stilley is a medical doctor specializing in emergency medicine. (Doc. 62-3). Dr. Stilley is also a certified medical review officer. (Doc. 62-4). Dr. Stilley received training regarding behaviors that would warrant a reasonable suspicion drug test as part of his training to be certified as a medical review officer. (Doc. 62-2, at 4). Dr. Stilley is the medical review officer for Prairie Meadows Racetrack and Casino (*Id.*, at 3) and in that capacity Dr. Stilley reviewed Prairie Meadows' drug testing policy (*Id.*, at 5). Dr. Stilley is also the chief medical officer of a clinic that provides occupational health services, including collecting specimens for drug testing. (*Id.*, at 3-4). Some of the companies that use Dr. Stilley's clinic for specimen collection contact Dr. Stilley and ask for his advice about whether a situation warrants a reasonable suspicion drug test, and Dr. Stilley answers those questions "in a generic sense" but refers the company to their own company drug testing policy to determine if a test is appropriate. (*Id.*). In determining when he believes a reasonable suspicion drug test is appropriate, Dr. Stilley relies on his

3

"knowledge and experiences as an emergency medicine physician treating patients with drug abuse and alcohol abuse," his training to obtain his certification as a medical review officer, and his experience with people who come in to his clinic. (*Id.*, at 4). Dr. Stilley reviewed the American Association of Medical Review Officers' Website regarding reasonable suspicion drug tests (*Id.*, at 6), and an article regarding reasonable suspicion drug testing published by Wolters Kluwer (*Id.*; Doc. 59-4) in reaching his opinions relevant to the Hospital's motion.

The Hospital moves to exclude portions of Dr. Stilley's anticipated testimony expressing certain opinions set forth in his report. (Doc. 59-1). Specifically, the Hospital seeks to prevent Dr. Stilley from expressing his opinions that 1) the Hospital lacked reasonable suspicion to request that plaintiff submit to a drug test, and 2) the Hospital was legally required to seek a reasonable suspicion drug test immediately after witnessing the erratic behavior that allegedly justified the test. (Doc. 59-1, at 5, 7). The Hospital asserts that the Court should exclude Dr. Stilley's testimony regarding the challenged opinions because they are improper legal conclusions as to the existence of reasonable suspicion under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Iowa Constitution, Dr. Stilley's opinions regarding the timing of the test are not relevant, Dr. Stilley is not qualified to opine as to the requirements of the Policy and its application to plaintiff, and because Dr. Stilley's methodology in determining whether the Hospital had reasonable suspicion to request the drug test is unreliable. (Doc. 59-1).

In response, plaintiff argues that Dr. Stilley is qualified to opine as to whether the Hospital had reasonable suspicion under the Policy based on his training, work experience, and review of published authorities regarding reasonable suspicion drug testing. (Doc. 62-1, at 3-5). Plaintiff likewise argues that Dr. Stilley's opinions regarding "reasonable suspicion" are not improper legal conclusions because Dr. Stilley

is opining as to the lack of "reasonable suspicion" as the term is used in the Policy, rather than the legal standard for "reasonable suspicion" under the Fourth Amendment or Article I, Section 8. (*Id.*, at 5-8). Plaintiff also argues that the timing of the Hospital's request that plaintiff submit to a drug test is relevant because the timing of the requested test did not comply with the Policy, which "is the heart of one of [plaintiff's] claims against [the Hospital]." (*Id.*, at 8).

The Hospital raises three arguments in its reply. The Hospital argues that despite Dr. Stilley's characterization of his opinion, it is still, in effect, a legal conclusion about the existence of reasonable suspicion in the constitutional context. (Doc. 63, at 2). Second, the Hospital argues that if Dr. Stilley is not testifying as to the existence of "reasonable suspicion" in the constitutional sense, then Dr. Stilley's testimony is not a proper expert opinion because the jury could understand and apply the plain meaning of "reasonable suspicion" in the Policy without expert testimony. (*Id.*, at 2). Finally, the Hospital asserts that whether or not the Hospital violated the Policy is irrelevant to plaintiff's claims, and the "reasonable suspicion" standard is only relevant to whether the Hospital violated plaintiff's constitutional rights, and thus the probative value of any testimony regarding "reasonable suspicion" within the meaning of the Policy is substantially outweighed by the risk of confusing and misleading the jury. (*Id.*, at 3).

## II. APPLICABLE LAW

The Court serves as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Under Federal Rule of Evidence 702, expert testimony is admissible where (1) the testimony is "based on scientific, technical, or other specialized knowledge," and is "useful to the finder of fact in deciding the ultimate issue of fact.," i.e. it is relevant; (2) the expert is "qualified to assist the finder of fact;" and (3) "the proposed evidence [is] reliable or trustworthy in an evidentiary sense, so that, if

the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014) (citation omitted). The party offering expert testimony has the burden to show by a preponderance of the evidence that the testimony is admissible. *See Krueger v. Johnson & Johnson Prof'l, Inc.*, 160 F. Supp. 2d 1026, 1030 (S.D. Iowa 2001), *aff'd*, 66 Fed. App'x 661 (8th Cir. 2003). A witness who offers expert opinions on multiple topics may be qualified as an expert on one topic but not others. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (holding that the district court erred in allowing hydrologist to testify regarding safe warehousing practices where hydrologist lacked "education, employment, or other practical personal experiences to testify as an expert regarding safe warehousing practices").

An expert may offer opinions that embrace the ultimate issue in the case. FED. R. EVID. 704(a). On the other hand, an expert cannot testify as to matters of law, and legal conclusions are not a proper subject of expert testimony. *Lombardo v. Saint Louis*, No. 4:16-CV-01637-NCC, 2019 WL 414773, at *8 (E.D. Mo. Feb. 1, 2019); *see also S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995). Similarly, "[o]pinions that 'merely tell the jury what result to reach' are not admissible." *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (quoting FED. R. EVID. 704 advisory committee's note). Even if an expert is qualified to offer a particular opinion, the court must also consider other evidentiary rules before admitting the testimony, including determining whether the testimony should be admitted under Rule 403. *Daubert*, 509 U.S. at 595.

## III. ANALYSIS

### A. *Stilley's Opinion that the Hospital lacked Reasonable Suspicion*

The Hospital argues that Dr. Stilley's opinions that the Hospital lacked reasonable suspicion to request plaintiff submit to a drug test constitute improper legal conclusions. (Doc. 59-1, at 7-13). Specifically, the Hospital points out that plaintiff alleges violations of his constitutional rights to be free from unreasonable searches, and that the existence of "reasonable suspicion" to justify a search under the Iowa or United States constitution is a mixed question of law and fact, which is an improper subject for an expert opinion. (*Id.*, at 7). The Hospital argues that Dr. Stilley's opinions regarding reasonable suspicion are improper legal conclusions that invade the province of the judge and jury. (*Id.*, at 8).

Plaintiff argues that the Hospital is conflating "reasonable suspicion" in the constitutional sense with "reasonable suspicion" as the term is used in the Policy, so Dr. Stilley's opinions are not legal conclusions, but rather are expert opinions as to the meaning of "reasonable suspicion" as the term is used by medical review officers or other human resources professionals. (Doc. 62-1, at 5-8). In support of this argument, plaintiff points out that Iowa Code Section 730.5 defines "reasonable suspicion drug or alcohol testing," and asserts that the statutory definition makes no reference to "reasonable suspicion" in the Constitutional sense. (*Id.*, at 6 (citing IOWA CODE 730.5(1)(i))).

In its reply, the Hospital argues that despite Dr. Stilley's characterization of his opinions, Dr. Stilley's opinions still constitute legal conclusions. (Doc. 63, at 2). The Hospital also argues that even if Dr. Stilley's opinions are limited to the existence of reasonable suspicion in the context of the Policy, the probative value of Dr. Stilley's testimony is substantially outweighed by the risk of misleading or confusing the jury as to the meaning of reasonable suspicion in the constitutional sense. (*Id.*, at 3).

The Court finds that Dr. Stilley's opinions regarding the Hospital's lack of reasonable suspicion and his opinions that the Hospital violated the Policy are impermissible legal conclusions and must be excluded. Dr. Stilley's characterization of his own opinions as not being legal conclusions is not dispositive or binding on the Court. *See Lombardo*, 2019 WL 414773, at *8-10 (excluding expert opinions in a Section 1983 case where expert offered opinions stating that officer's use of force was "excessive" and "unnecessary" and that officer's conduct was "unreasonable" or not "objectively reasonable" despite expert's statement that he was not a lawyer and does not offer legal conclusions); *Morris v. Hockemeier*, No. 05-0362-CV-W-FJG, 2007 WL 1747136, at *4 (W.D. Mo. June 18, 2007) ("[J]ust because the expert states that he is not giving a legal opinion does not make it so.").

Turning to the substance of the opinions at issue, even if Dr. Stilley is only opining as to the meaning of "reasonable suspicion" as the term is used in the Policy, his opinions still constitute inadmissible legal conclusions. It is well established that an expert cannot offer an opinion that defendant violated a statute. *See Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 952 (D. Minn. 2018) (excluding expert's testimony "about the legal requirements of Title IX or about [the expert's] conclusions as to whether [defendant] complies with Title IX"); *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1367 (N.D. Ga. 2017) (noting that all witnesses, including experts "are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct." (citation omitted)); *Doe YZ v. Shattuck-St. Mary's Sch.*, 214 F. Supp. 3d 763, 781 (D. Minn. 2016) (holding that an expert's testimony "may not extend to whether [defendant] or any of its employees actually violated Minnesota's mandatory reporting statute, because that would be an inadmissible legal conclusion"). Moreover, an expert cannot offer a legal opinion as to whether a particular element of a claim is present. *See McCabe v. MacAuley*, No. C05-73-LRR,

2007 WL 625569, at *4 (N.D. Iowa Feb. 26, 2007) (holding that legal conclusions as to a particular element of a claim are inadmissible for the same reasons that legal conclusions as to a claim as a whole are inadmissible).

The Policy provides that the Hospital "reserves the right to conduct any form of drug or alcohol testing permitted by law including, but not limited to . . . reasonable suspicion testing." (Doc. 62-6, at 2). Iowa Code Section 730.5 defines "reasonable suspicion drug or alcohol testing" as "drug or alcohol testing based upon evidence that an employee is using or has used alcohol or other drugs in violation of the employer's written policy drawn from specific objective and articulable facts and reasonable inferences drawn from those facts in light of experience." IOWA CODE § 730.5 (1)(i). Section 730.5 then sets forth a non-exhaustive list of six facts and inferences which employers can use as evidence that an employee has violated the employer's drug or alcohol policy. *Id*. Section 730.5 provides that "[e]mployers may conduct reasonable suspicion drug or alcohol testing." *Id*. at § 730.5(8)(c). The Policy sets forth verbatim four of the six facts and inferences in Section 730.5(1)(i) in the reasonable suspicion section of the Policy. (*Compare* Doc. 62-6, at 2-3 with IOWA CODE § 730.5(1)(i)(1)-(3), (6).

Even assuming that "reasonable suspicion" as the term is used in the Policy has a different meaning than "reasonable suspicion" in the constitutional sense, Dr. Stilley's opinions still constitute legal conclusions. The Policy permits the Hospital to perform any form of drug or alcohol test permitted by law, which includes reasonable suspicion drug or alcohol testing under Iowa Code Section 730.5. The overlap between the Policy and Iowa Code Section 730.5 is apparent given that the "reasonable suspicion" section of the Policy adopts verbatim the relevant language regarding erratic behavior as a basis for a reasonable suspicion drug test. Given that the limits on reasonable suspicion testing under the Policy are coextensive with the Hospital's ability to request a reasonable

9

suspicion drug test under Iowa Code Section 730.5, Dr. Stilley's opinions that the Hospital lacked reasonable suspicion or otherwise violated the terms of the Policy are improper legal conclusions about whether the Hospital violated Iowa Code Section 730.5.

For these reasons, the Hospital's motion is **granted in part**, and Dr. Stilley may not testify as to whether the Hospital had reasonable suspicion to request that plaintiff submit to a drug test and/or whether the Hospital complied with the terms of its policy.[1]

### B. *Admissibility of the Reasonable Suspicion Opinions Under Federal Rule of Evidence 403*

Even if Dr. Stilley's challenged opinions are not legal conclusions, the Court would still exclude those opinions under Federal Rule of Evidence 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury." FED. R. EVID. 403. The probative value of Dr. Stilley's opinions regarding the Hospital's obligations under the Policy, and whether the Hospital had reasonable suspicion within the meaning of the Policy, is unclear. As the Hospital points out, plaintiff's claims to which Dr. Stilley's challenged opinions are relevant are brought under the United States and Iowa constitutions, and thus the relevant inquiry is whether the Hospital violated plaintiff's constitutional rights, not whether the Hospital violated the terms of the Policy. (Doc. 63, at 3). Thus, Dr. Stilley's opinions that the Hospital seeks to exclude have minimal probative value.

---

[1] Specifically, Dr. Stilley cannot provide the following opinions reflected on page 1 of his report: "It is my opinion that the alleged 'erratic' behavior of Mr. Frye during a hospital power failure on December 7, 2016, and his subsequent response as Plant Maintenance Manager, does not meet the acceptable standard for observable conduct that would create a reasonable suspicion of drug use as required by the Hospital's drug testing policy. The descriptions of Mr. Frye's behaviors on the date of the hospital failure would not lead a reasonable person to be suspicious that Mr. Frye was under the influence of drugs or alcohol. . . . The Hospital lacked the reasonable suspicion necessary to request a drug test from Mr. Frye under the terms of its own drug-testing policy." (Doc. 59-2, at 1).

On the other hand, Dr. Stilley's opinions pose a substantial risk of confusing the issues in the case and/or misleading the jury. In addition to plaintiff's constitutional claims, plaintiff also asserts a claim that the Hospital violated Iowa Code Section 730.5 by terminating plaintiff for refusing to submit to a drug test that did not meet the statutory definition of a reasonable suspicion drug test. (Doc. 34, at 44-46). Given the overlapping use of the term "reasonable suspicion" it would be very difficult, if not impossible, for the jury to separate Dr. Stilley's opinion that the Hospital lacked "reasonable suspicion" under the Policy from the impermissible legal opinion that the Hospital did not meet the requirements for a "reasonable suspicion drug or alcohol test" under Section 730.5

Similarly, "reasonable suspicion" is also a term of art used in determining whether certain searches are lawful under the Fourth Amendment and Article I, Section 8. *See, e.g.*, *United States v. Houston*, 920 F.3d 1168, 1172–73 (8th Cir. 2019) (setting forth the reasonable suspicion standard to perform a pat-down search); *State v. Coleman*, 890 N.W.2d 284, 300 (Iowa 2017) (same); *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (applying reasonable suspicion standard to a school administrator's search of a student); *State v. Lindsey*, 881 N.W.2d 411, 415 (Iowa 2016) (same). Given that reasonable suspicion has a legally defined meaning under the same constitutional provisions relevant to plaintiff's claims, there is a substantial probability that Dr. Stilley's testimony about reasonable suspicion in the context of the Policy will confuse or mislead the jury as to reasonable suspicion under the Fourth Amendment and Article I, Section 8. In light of the minimal probative value of the challenged portions of Dr. Stilley's testimony about reasonable suspicion under the Policy, the risk of the jury being misled or confused by the use of the term "reasonable suspicion" in the context of Iowa Code Section 730.5 or the United States and Iowa constitutions substantially outweighs the probative value of the testimony. Thus, even if Dr. Stilley's opinions at issue did not constitute improper legal conclusions, the Court would still exclude them

under Rule 403. Because the Court has found Dr. Stilley's opinions to be inadmissible for the reasons set forth above, the Court will not address the Hospital's arguments regarding Dr. Stilley's qualifications or methodology.

### C. Dr. Stilley's Opinion that the Hospital Should Have Immediately Tested Plaintiff

The Hospital seeks to exclude the following portions of Dr. Stilley's testimony about the timing of the Hospital's request that plaintiff submit to a drug test:

> [The Hospital's] request for a testing specimen seven days after the allegedly observable and suspicious conduct is inappropriate, exceeds the scope of the Hospital's policy, and does not comport with standardized drug testing procedures.
>
> If the actions of the leadership of the Hospital were truly in response to a reasonable suspicion of drug or alcohol impairment, the leadership had an obligation to immediately test [plaintiff] and place him on administrative leave.

(Doc. 59-1, at 5 (quoting Doc. 59-2, at 2-3)). The Hospital argues that Dr. Stilley's opinions regarding the timing of the requested drug test are impermissible legal conclusions and are not relevant to plaintiff's claims that the Hospital violated plaintiff's constitutional rights. (Doc. 59-1, at 11-13). Plaintiff argues that Dr. Stilley's opinions are not legal conclusions, they are conclusions about industry standards for reasonable suspicion drug testing drawn from Dr. Stilley's training and experience as a medical review officer, and Dr. Stilley's opinions are relevant to whether the Hospital complied with the reasonable suspicion drug testing policy in requesting a specimen from plaintiff. (Doc. 62-1, at 8-10).

The portion of Dr. Stilley's opinion stating that the Hospital's "request for a testing specimen seven days after the allegedly observable and suspicious conduct . . . does not comport with standardized drug testing procedures," is a proper subject for expert testimony. Testimony about industry standards, or policies adopted by other institutions

to comply with applicable regulations, is not generally a legal opinion or conclusion. *See Portz*, 297 F. Supp. 3d at 953 (holding that expert could testify as to the history and purposes of Title IX and relevant industry practices or standards, but could not testify about the legal requirements of Title IX); *Shattuck-St. Mary's Sch.*, 214 F. Supp. 3d at 781 (permitting plaintiffs' expert to testify "as to the existence of mandatory reporting statutes and the policies and procedures that other schools have implemented to comply with such statutes" but excluding testimony about whether defendant violated the mandatory reporting statute in question). This portion of Dr. Stilley's opinion is relevant because if the timing of the Hospital's request for a drug test did not comport with industry standards it makes it more likely that the Hospital's request that plaintiff submit to a drug test was pretext for retaliating against plaintiff for requesting FMLA leave, and thus the opinion is admissible under Rules 401 and 402. Dr. Stilley's opinion will also help the trier of fact determine if the Hospital's request comported with industry standards, and Dr. Stilley's opinion is based on his education and experience as a medical review officer, so it is an admissible expert opinion under Rule 702. Thus, Dr. Stilley's opinion regarding industry standards for the timing of reasonable suspicion drug tests is admissible, and the Hospital's motion to strike is **denied in part**.

The remainder of Dr. Stilley's opinions regarding the timing of the Hospital's request that plaintiff submit to a reasonable suspicion drug test, however, constitute impermissible legal conclusions. As set forth above, Dr. Stilley cannot testify that the timing of the Hospital's request was inconsistent with the terms of the Policy or otherwise "inappropriate," as the requirements of the Policy are coextensive with Iowa Code Section 730.5, and therefore Dr. Stilley's opinion constitutes a legal conclusion and does nothing more than tell the jury what verdict to reach. *See Lee*, 616 F.3d at 809; *Portz*, 297 F. Supp. 3d at 952; *Ma*, 288 F. Supp. 3d at 1367; *Shattuck-St. Mary's Sch.*, 214 F. Supp. 3d at 781. Dr. Stilley's testimony regarding the Hospital's testing obligations once

the Hospital believed it had reasonable suspicion likewise constitute inadmissible legal opinions. *See United States v. Hawley*, 562 F. Supp. 2d 1017, 1040 (N.D. Iowa 2008) (excluding expert testimony that provided legal definitions of terms and defined the defendant's legal duties as an insurance agent). The Hospital's motion to strike is **granted in part** as to Dr. Stilley's opinion regarding the Hospital's timing that plaintiff submit to a drug test.[2]

## IV. CONCLUSION

For the reasons stated above, defendant's Partial Motion to Strike Opinions and Testimony of Expert David G. Stilley (Doc. 59) is **granted in part and denied in part**. Specifically, Dr. Stilley will not be allowed to opine that the Hospital lacked a reasonable suspicion necessary to request a drug test from plaintiff. Dr. Stilley may render an opinion that plaintiff's behavior might have been the result of issues other than drugs or alcohol and that plaintiff's observable behaviors were not consistent with the use of drugs or alcohol. Dr. Stilley may also opine that the request for drug testing should have been made immediately after the Hospital observed plaintiff's alleged erratic behavior based on industry standards (but not based on his legal interpretation of the Hospital's policy).

**IT IS SO ORDERED** this 7th day of June, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[2] Specifically, Dr. Stilley cannot testify that "[The Hospital's] request for a testing specimen seven days after the allegedly observable and suspicious conduct [was] inappropriate [or] exceed[ed] the scope of the Hospital's policy." (Doc. 59-2). Dr. Stilley also cannot testify as to any of the opinions set forth on page 3 of his report. (*Id.*, at 59-3).